IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Victor Clark, )<br>)<br>           Petitioner, )<br>)<br>   vs. )<br>)<br>Bonita Mosley, )<br>)<br>           Respondent. )<br>)| Civil Action No. 6:17-219-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the respondent's motion summary judgment[1] (doc. 9). The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c)(D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

The respondent filed a motion for summary judgment on March 24, 2017 (doc. 9). On March 27, 2017, by order issued pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the motion to dismiss and summary judgment procedures and the possible consequences if he failed to adequately respond to the motion (doc. 10). On April 17, 2017, the petitioner filed a response in opposition to the motion (doc. 12), and the respondent filed a reply on April 21, 2017 (doc. 14).

---

[1] The respondent captioned and filed the motion as a motion for summary judgment (doc. 9). However, within the motion, the respondent states that it is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) or, in the alternative, for summary judgment pursuant to Rule 56 (*id.* at 1). As matters outside the pleadings have been submitted by the parties and not excluded by the court, it will be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

## FACTS PRESENTED

The petitioner is an inmate currently incarcerated at the Federal Correctional Institution ("FCI") in Edgefield, South Carolina (doc. 9-1). During the time frame referenced in his petition, the petitioner was incarcerated at the D. Ray James Correctional Facility ("DRJ")[2] in Folkston, Georgia, from February 5, 2013, to April 16, 2015 (doc. 9-2). The petitioner is currently serving an aggregated 170-month term of incarceration, with an aggregated 36-month term of supervision, imposed by the United States District Court for the Middle District of Florida (doc. 9-1). His aggregated offenses included Unlawful Re-Entry into the United States of a Previously Deported Convicted Felon and Found to be Unlawfully in the United States After Previous Deportation of a Convicted Felon in violation of 8 U.S.C. § 1326 (a) & (b)(2); Convicted Felon in Possession of Firearms in violation of 18 U.S.C. § 922 (g)(1); and Illegal Alien in Possession of Firearms in violation of 18 U.S.C. § 922 (g)(5)(A) (under his alias name of Boysie Nicholas Curling). The petitioner's projected date of release is March 29, 2019, via Good Conduct Time ("GCT") Release (*id.*).

On December 4, 2014, at approximately 3:06 p.m., Correctional Officer C. Sass heard inmates making loud noises on the South Recreation Pavilion. When he arrived, he noted that "multiple fights were happening all around" (doc. 9-4 at 3). He gave several verbal commands for inmates to stop fighting, but they did not (*id.*). Officer Sass witnessed another inmate swinging a broomstick at the petitioner (*id.* at 1, 3). Correctional Officer Jordan Miller saw inmates fighting over what he described as a dustmop stick, and the petitioner and an inmate were fighting on the ground (*id.* at 4). The petitioner was hitting the other inmate in the head repeatedly with a rock. Officer Miller took the rock and tossed it aside, and he and other officers stood the petitioner up against the fence (*id.*). The petitioner tried to pick up the rock, and Officer Miller kicked it out of his reach (*id.*). The

---

[2] DRJ is a private prison operated by The GEO Group, Inc., and contracted by the Bureau of Prisons ("BOP").

petitioner then turned around and began kicking the other inmate again (*id.*). Officer Miller gave the petitioner verbal commands to stop, but he continued. Officer Miller and Correctional Officer Austin "had to put him on the ground and . . . still had to continue to give verbal commands to quit resisting" (*id.*). The officers then placed the petitioner in hand restraints and took him to the Special Housing Unit (*id.*).

The Special Investigative Services ("SIS") Department investigated the incident (doc. 9-4 at 1). On December 26, 2014, Investigating Officer K. Henderson wrote Incident Report #2665057, citing the petitioner with a violation of Inmate Discipline Code 101, Assaulting Any Person, and Code 108, Possession of a Hazardous Tool (*id.*; doc. 9-6). The incident report noted that "[b]ased on evidence collected from 12/04/14 to 12/15/14 the following events occurred" (doc. 9-4 at 1).

On December 26, 2014, Lieutenant Lang provided the petitioner with advance written notice of the violation through a copy of Incident Report #2665057 (doc. 9-4 at 1-2). The incident report provided the petitioner with a description of the alleged violations and the prohibited codes (*id.*). The petitioner was "advised of [his] right to remain silent at all stages of the disciplinary process but informed that [his] silence may be used to draw an adverse inference against [him] at any stage of the institutional disciplinary process" (*id*. at 2). The petitioner was also notified that his "silence alone may not be used to support a finding that [he] committed a prohibited act." The petitioner acknowledged that he understood his rights (*id.*). The petitioner made the following statement to Lt. Lang, "He hit me in my head something, I grabbed the thing he had from him and then he grabbed something else and hit me again, I then took that from him and started hitting him back" (*id.*). According to the incident report, the petitioner sustained injuries to his right knee and right hand from the altercation, and the other inmate sustained injuries to his head and above his right eye from the altercation (*id.* at 1). Lt. Lang reviewed all of the evidence set forth by the incident report, found sufficient evidence to support the charge of the Code 101

3

and 108 violations against the petitioner, and referred Incident Report #2665057 to the Unit Discipline Committee ("UDC") at DRJ (*id*.).

On December 30, 2014, the UDC held a hearing on the Code 101 and 108 violations (doc. 9-4 at 1). During the UDC hearing, the petitioner did not wish to make a statement and requested to wait for his Disciplinary Hearing Officer ("DHO") hearing (*id*.). Based on the severity of the charge, the UDC referred the Code 101 and 108 violations to the DHO for a hearing and possible loss of GCT (*id*. at 2). The UDC recommended "loss 54 days GCT, 180 days [disciplinary segregation("DS")], 6 months loss phone/commissary" privileges (*id.* at 1).

On December 30, 2014, the petitioner received advance written notice of a hearing before the DHO as well as a recitation of his rights at the DHO hearing (doc. 9-7).

On January 10, 2015, Incident Report #2665057 was suspended for referral to the Federal Bureau of Investigations ("FBI") for possible criminal prosecution (doc. 9-6 at 2; doc. 9-9 at 3). On January 21, 2015, the petitioner requested Case Manager J. Keiser as a staff representative to assist him in the DHO hearing (doc. 9-8; doc. 9-9 at 3). On February 11, 2015, Investigating Officer Henderson noted that the FBI declined prosecution of the code violations and released the incident report back to DRJ for disciplinary action (doc. 9-6 at 2; doc. 9-9 at 3).

On February 17, 2015, the petitioner received a hearing before the DHO (doc. 9-9 at 1). The petitioner was present and again advised of his rights; he stated that he understood his rights (*id*. at 1, 3). Staff Representative J. Keiser appeared with the petitioner at the DHO hearing (*id*. at 1). Staff Representative Keiser stated that she met with the petitioner prior to the DHO hearing and they were both ready to proceed (*id*.). During the hearing, the petitioner admitted to committing the Code 101 violation, Assaulting Any Person, and Code 108 violation, Possession of a Hazardous Tool (*id*. at 1-2). He admitted "using a rock and hitting" another inmate with it (*id*.). The petitioner stated that the other

4

inmate hit him in the back of the head with a "lock in a sock," but he blocked it and swung it at the other inmate (*id*.). The petitioner then stated that after the inmates broke up, he sat on a bench, and the other inmate came at him with a rock, then a broomstick, and he defended himself. Three inmate witnesses also testified at the DHO hearing that the other inmate hit the petitioner with a lock and then a rock (*id.* at 2). One of the inmates testified that the petitioner "protected himself" when the inmate came at him with a rock, and another inmate testified that when the other inmate came at the petitioner with a rock, the petitioner hit him in the head with the rock (*id.*). After consideration of all the evidence, the DHO found that the petitioner committed the prohibited act of Possession of a Weapon, in violation of Code 108, and Fighting Another Person, in violation of Code 201 (*id*. at 3). The DHO noted that he "considered the elements of prohibited acts for Code 101, assaulting any person, and the element[s] of prohibited act for Code 201, fighting with another person, and finds the prohibited act of assaulting any person to be inappropriate in this incident and finds the prohibited act of Code 201, fighting with another person, to be more appropriate in this case" (*id*. at 5-6). The DHO based the decision on the facts and evidence presented with the incident report, including staff memoranda, the reporting officer's statement, the petitioner's admission to fighting another inmate, three inmate witness statements, medical reports, surveillance footage and photographs, and the SIS investigation finding that the petitioner was an active participant in a fight on a recreation yard using a lock in a sock and a rock as a weapon (*id*. at 2-6).

On the Code 108 violation, the DHO imposed sanctions of disallowance of 41 days loss of GCT, six months loss of phone privileges (from 02/17/15 to 08/17/15), and six months loss of commissary privileges (from 02/17/15 to 08/17/15) (doc. 9-9 at 6). On the Code 201 violation, the DHO imposed sanctions of disallowance of 27 days loss of GCT and six months loss of visitation privileges (from 02/17/15 to 08/17/15) (*id*.). The DHO report was delivered to the petitioner on February 26, 2015 (*id*.).

5

The petitioner filed Remedy #815336-R1 with the BOP's Privatization Management Branch ("PMB")[3] on March 25, 2015, appealing the DHO's sanctions of February 17, 2015, for Incident Report #2665057 (doc. 9-3, A. Williams decl. ¶¶ 6-7 & att. B). The petitioner contended that the incident report was not served on him within the time period provided by BOP policy (*id.*). On April 9, 2015, the Bureau's PMB remanded the DHO report for rehearing following the petitioner's appeal in Remedy #815336-R1 (*id.*). The petitioner transferred from DRJ to the FCI in Jesup, Georgia, on April 16, 2015 (doc. 9-2).

On May 6, 2015, the petitioner received advance written notice of the charges against him and a new copy of Incident Report #2665057 from Lt. E. Curl at FCI Jesup (doc. 9-10 at 1). Lt. Curl investigated the incident report and alleged violations of Code 201, Fighting Another Person, and Code 108, Possession of a Hazardous Tool to Serve as a Weapon Capable of Doing Serious Bodily Harm to Others (*id.* at 2). Lt. Curl advised the petitioner of his rights during the disciplinary process, and the petitioner acknowledged that he understood his rights (*id.*). The petitioner stated that the incident report was not accurate as he was attacked by the other inmate and defended himself using the rock the other inmate threw at him (*id.*). Based on the facts in the incident report and the petitioner's admission of participation in the fight with another inmate, Lt. Curl found that the petitioner was properly charged with the Code 201 violation (*id.*). However, Lt. Curl determined that the Code 108 violation against the petitioner was not supported by the evidence, as the petitioner used the rock that was thrown at him by another inmate (*id.*).

On May 7, 2015, the UDC held a hearing on the Code 201 and 108 violations (doc. 9-10 at 1). During the UDC hearing, the petitioner requested to comment at his DHO hearing (*id.*). Based on the "camera footage showing both inmates fighting," the UDC

---

[3] The PMB reviews administrative remedy appeals of BOP inmates housed in private prison facilities.

referred the Code 201 and 108 violations to the DHO for a hearing and possible loss of GCT (*id*.). The UDC recommended loss of GCT "if found guilty"(*id*.).

Also on May 7, 2015, the petitioner received the Notice of Discipline Hearing Before the DHO and the list of his inmate rights at the hearing (docs. 9-11,9-12). The petitioner requested Unit Manager W. Freeman as a Staff Representative to assist him at the DHO hearing (doc. 9-13).

On May 12, 2015, the petitioner received a hearing before the DHO (doc. 9-14 at 2). The petitioner was present and again advised of his rights; he stated that he understood his rights (*id*. at 1-2). Staff Representative W. Freeman appeared with the petitioner at the DHO hearing (*id*.). Staff Representative Freeman stated that he met with the petitioner prior to the DHO hearing, and they were both ready to proceed (*id*. at 2). The petitioner did not request any witnesses during the DHO rehearing (*id*.). During the hearing, the petitioner denied committing the code violations and stated that the other inmate assaulted him (*id*. at 1-2). He asserted that the other inmate hit him in the back of the head with a "lock in a sock" without any warning, and other inmates grabbed him and held him while the other inmate hit him with the rock (*id.* at 2). The petitioner stated that the inmate also came at him with a broom handle, and he took the broom handle from the inmate and started hitting the inmate with the rock in an effort to defend himself (*id.*).

After consideration of all the evidence, the DHO found that the petitioner committed the prohibited act of Fighting Another Person, in violation of Code 201 (doc. 9-14 at 3). The DHO based the decision on the facts and evidence presented with the incident report, including staff memoranda, the reporting officer's statement, the petitioner's admission to fighting another inmate, and medical reports (*id*. at 3-4). The DHO found that the Code 108 violation was not supported by the evidence and expunged the charge from the petitioner's disciplinary record (*id*.).

On the Code 201 violation, the DHO imposed sanctions of disallowance of 27 days loss of GCT and six months loss of social visitation privileges (from 02/17/15 to 08/17/15) (doc. 9-14 at 4). On or about June 12, 2015, the DHO prepared a written report detailing his decision, the evidence relied upon, and the reasons for the sanctions imposed (*id.* at 5). The DHO report was delivered to the petitioner on June 24, 2015 (*id.*).

The petitioner filed Remedy #815336-R2 on July 14, 2015 (doc. 9-3, Williams decl. ¶ 8 & att. A, B). The remedy was rejected by SERO as filed at the wrong level (*id.*). In a memo dated July 23, 2015, Unit Manager W. Freeman stated that the staff at FCI Jesup had informed the petitioner of the correct office to submit his remedy package prior to him sending it to SERO, and the petitioner had followed the directions correctly. The issue concerning the packet had been corrected, and Unit Manager Freeman requested that the petitioner be allowed to resubmit his remedy (*id.*) The petitioner submitted Remedy #815336-R3 on July 28, 2015, to SERO, and it was rejected as filed with the wrong level (*id.*). The remedy was returned to the petitioner on September 10, 2015, and he received it on September 21, 2015 (*id.*).

On August 18, 2015, the petitioner filed Remedy #832284-R1 with the SERO (doc. 9-3, Williams decl. ¶¶ 9-10 & att. A, C). The petitioner asserted that he was not served with Incident Report #2665057 within 24 hours of the time the staff became aware of the alleged incident and thus the rehearing finding of the DHO on June 12, 2015, that he committed a violation of Code 201 should be expunged (*id.*). On September 1, 2015, the SERO responded by denying Remedy #832284-R1, noting that while Incident Report #2665057 was not written until 22 days after the incident, the petitioner failed to demonstrate any injury or show how the delay in issuance of the incident report hindered his ability to defend himself during the disciplinary process. (*id.*). The SERO also determined that the petitioner received proper due process during the DHO rehearing, the DHO finding of his Code 201 violation was supported by the evidence, and the sanctions

were appropriate for the offense (*id.*). The petitioner was notified that he could appeal the SERO's decision on Remedy #832284-R1 to the BOP's Office of General Counsel (*id.*).

The petitioner filed a Central Office Administrative Remedy Appeal on October 1, 2015, and it was identified as Remedy #815336-A1 (doc. 9-3, Williams decl. ¶ 11 & att. A, B; doc. 12-1 at 1-2). In the administrative remedy appeal, the petitioner argued that the incident report and accompanying finding of guilt and sanctions imposed on June 12, 2015, after the DHO rehearing, violated his constitutional rights (doc. 12-1 at 1). The petitioner further alleged that the staff at DRJ failed "to protect [him] from dangers, injury and assault" (*id.* at 2). According to the declaration of A. Williams, a response was due to the petitioner on November 20, 2015, but due to the large backlog of administrative remedies at the Central Office level, the agency was unable to respond to the petitioner within this time frame (doc. 9-3, Williams decl. ¶ 11 & att. A, B). On November 21, 2016, the BOP Central Office provided a response for informational purposes only, noting that in this remedy the petitioner appealed the February 17, 2015, decision of the DHO in which he was found to have committed violations of Code 201 and 108. It was further noted that the PMB had remanded the matter after which the incident report was reheard and while the petitioner appealed the rehearing as part of Remedy #832284, he did not complete the administrative remedy process by appealing the decision to the Central Office (*id.*).

The petitioner filed his Section 2241 petition on January 20, 2017 (doc. 1 at 10).[4] He asserts a violation of his due process rights because he did not receive the incident report until 22 days after the alleged incident, while BOP policy (Program Statement Code 5270.09) provides that the incident report should have been delivered within 24 hours of the alleged incident (*id.* at 8). The petitioner contends that he "appealed the Incident

---

[4] As the petitioner is a prisoner, he should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the District Court. As it is unclear on what date the petitioner gave his pleading to prison authorities, the undersigned has used the date the petitioner signed the petition.

9

Report that was served upon me and the Privatization Management Administrator remanded the case back to the institution for further review," but had the same outcome on rehearing (*id*.). He further alleges that "the private facility of [DRJ] has violated his Fifth Amendment rights by taking away 20 plus days of good time based on a false Incident Report that was not issued in a timely manner" (*id*.). He requests that the court "restore the earned credit days that was taken for an Incident Report that was not processed in a timely manner according to BOP policy" (*id*. at 9).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient

to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***Exhaustion of Administrative Remedies***

The respondent first argues that the petitioner failed to exhaust his administrative remedies relating to the May 12, 2015, DHO rehearing and his Code 201 violation (doc. 9 at 5-7). Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under Section 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490–91 (1973) (requiring exhaustion in a § 2241 matter). The BOP's grievance procedure is a three-tiered process whereby an inmate may complain about any aspect of his confinement. 28 C.F.R. § 542.10. The process begins with the inmate attempting to informally resolve the complaint with a staff member. *Id.* § 542.13(a). If informal resolution is not successful, the inmate may file a formal written complaint to the Warden. This complaint must be filed within 20 calendar days from the date on which the basis for the complaint occurred. *Id.* § 542.14(a). If the inmate is not satisfied with the Warden's response, that response may be appealed to the Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel (on a form designed for Central Office Appeals) within 30 calendar days of the date the Regional Director signed the response. *Id.* § 542.15(a), (b).

The respondent contends that the petitioner failed to complete the administrative remedy process for the DHO rehearing by failing to appeal Remedy #832284 to the BOP Central Office (doc. 9 at 7). However, as noted by the petitioner in his response

11

in opposition to the motion for summary judgment (doc. 12 at 1-3), the SERO denied Remedy #832284-R1 on September 1, 2015, and he filed an appeal with the BOP Central Office on October 1, 2015 (doc. 12-1 at 1). Only the BOP's response to the appeal is included by the respondent in the exhibits submitted in support of the motion for summary judgment (doc. 9-3 at 19), while the petitioner submitted a copy of his Central Office Administrative Remedy Appeal (doc. 12-1 at 1-2). In the appeal, the petitioner argued that the "incident report and accompanying finding of guilt and sanctions imposed on June 12, 2015 (rehearing) violates several constitutional protections guaranteed . . . by the United States Constitution" (*id.*). On the administrative appeal document, the Remedy #832284-N is struck through with Remedy #815336 written above (*id.*). The petitioner contends that this was done by "some unknown staff member" (doc. 12 at 2).

The petitioner contends that he did in fact exhaust his administrative remedies because the BOP changed the administrative remedy numbers "for some odd reason or in an attempt to hinder Petitioner in seeking remedy of the violation of DJR policy and to hinder him access to the courts" (doc. 12 at 3). Notably, in the October 1st administrative appeal, the petitioner alleged constitutional violations regarding the rehearing, which was the issue addressed in Remedy #832284 (doc. 12-1 at 1-2). The petitioner also argues that the BOP should not have given different case numbers to his administrative remedies as they all concerned the same incident (doc. 12 at 2).

The respondent argues in reply that, in accordance with BOP policy, a new administrative remedy number had to be assigned when the petitioner appealed the DHO rehearing as he presented new issues for review (doc. 14 at 2). However, the respondent does not address the issue of whether the petitioner's October 2015 administrative remedy appeal, which clearly addressed the rehearing, was appropriately identified as an appeal of Remedy #815336 rather than Remedy #832284.

Viewing the evidence in a light most favorable to the petitioner, issues of material fact remain as to whether his October 1, 2015, administrative remedy appeal was actually an appeal of Remedy #832284 regarding the DHO rehearing, which would mean that the petitioner exhausted his administrative remedies as to Remedy #832284. Accordingly, the undersigned recommends that the district court deny summary judgment on the issue of failure to exhaust administrative remedies and proceed to consider the petitioner's grounds on the merits.

*Due Process*

The petitioner alleges that his constitutional rights were violated when the BOP took 27 days of GCT "based on a false incident report that was not issued in a timely manner" (doc. 1 at 8). When a prisoner faces the possible loss of GCT in prison disciplinary proceedings, he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). Specifically, *Wolff* requires: (1) at least 24 hours advance written notice of the charges; (2) a written statement by the fact-finder as to evidence relied upon in decision; (3) a written statement by the fact-finder as to the reason for disciplinary action taken; (4) an opportunity to call witnesses and present documentary evidence, if institutional safety will not be jeopardized; (5) counsel substitute if the inmate is illiterate or the case is complex; and (6) an impartial hearing tribunal. *Id.* at 563-71. The BOP rules embodying disciplinary procedures, codified at 28 C.F.R. § 541.10 *et seq.*, were written so as to comply with the constitutional requirements of due process in prison discipline matters.

The record of the petitioner's DHO hearing and rehearing reflects that the due process requirements of *Wolff* were observed. The petitioner received advance written notice of the charges on December 26, 2014, and May 6, 2015, respectively (docs. 9-4, 9-10, 9-11). At the hearing on February 17, 2015, and the rehearing on May 12, 2015, the petitioner had the opportunity to present evidence and call witnesses, as well as the assistance of a staff representative in both hearings (docs. 9-4, 9-5, 9-7 through 9-14).

During both the DHO hearing and rehearing, the petitioner stated that he participated in fighting another inmate (doc. 9-9 at 2; doc. 9-14 at 2). The petitioner also received a copy of each DHO Report detailing each DHO decision, the evidence relied upon, and the reasons for the decisions and the sanctions imposed (doc. 9-9 at 3-6; doc. 9-14 at 3-4). Accordingly, the petitioner was afforded all due process required under *Wolff*.

***Sufficiency of Evidence***

The petitioner also alleges that the incident report was "false" (doc. 1 at 8). In *Superintendent, Mass. Corr. Inst. v. Hill*, the United States Supreme Court held "that revocation of good time does not comport with 'the minimum requirements of procedural due process,' . . . unless the findings of the [DHO] are supported by some evidence in the record." 472 U.S. 445, 455 (1985) (citations omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56 (citations omitted). "Judicial review of prison disciplinary actions is therefore limited solely to a determination as to whether there is evidence in the record to support the DHO's decision." *Kerr v. Rogers*, C.A. No. 5:16-cv-278-MGL-KDW, 2016 WL 5109544, at *4 (D.S.C. Sept. 12, 2016) (citations omitted), *R&R adopted by* 2016 WL 5076074 (D.S.C. Sept. 20, 2016). "Revocation of good time credits is not comparable to a criminal conviction . . . and neither the amount of evidence necessary to support such a conviction . . . nor any other standard greater than some evidence applies in this context." *Hill*, 472 U.S. at 456.

The record of the petitioner's disciplinary proceeding reveals that there is more that "some evidence" to support the DHO's decision that the petitioner committed a violation of Code 201, Fighting Another Person. The DHO considered the statements of the responding officers, who indicated that the petitioner hit the other inmate in the head with

14

a rock and continued fighting despite their commands to stop; medical assessments of the petitioner and the other inmate showing the petitioner sustained a superficial laceration of the right knee and left hand and shoulder tenderness, while the other inmate had multiple lacerations to the scalp requiring a pressure bandage as well as a laceration to the right eye; and the petitioner's own statement that he hit the other inmate with the rock that the inmate had thrown at him (doc. 9-14 at 3-4). As the DHO's decision in the rehearing is supported by some evidence, the requirements of due process were satisfied.

*Incident Report*

The petitioner alleges that he did not receive the incident report within 24 hours after the incident occurred, and therefore his 27 days loss of GCT should be expunged (doc. 1 at 8-9). The petitioner further alleges that the DRJ facility "violated his Fifth Amendment rights by taking away twenty plus days of good time based on a false incident report that was not issued in a timely manner" (doc. 1 at 8).

The federal regulations provide as follows, with regard to the inmate discipline process:

> (a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will **ordinarily** receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

28 C.F.R. § 541.5 (emphasis added). BOP Program Statement 5270.09, Inmate Discipline Program, Chapter 2, Discipline Process, states:

> (a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will **ordinarily** receive the incident report within 24 hours of staff becoming aware of your involvement in the incident. . . .

15

(Doc. 9-15) (emphasis added).

The petitioner received a copy of the incident report on December 26, 2014, for the first DHO hearing and on May 6, 2015, prior to the DHO rehearing (docs. 9-4, 9-5, 9-10). The petitioner received the incident report 22 days after the incident due to the SIS Department's investigation into whether the petitioner was a willing participant or simply a victim of an assault (docs. 9-4, 9-5, doc. 9-6). With regard to the rehearing, the delay was due to the remand of the matter following the petitioner's filing of an administrative remedy (doc. 9-10 at 2).

Federal regulations and BOP policy do not mandate that an incident report be delivered within 24 hours; instead, the regulations and policy state that an inmate will "ordinarily" receive the report within 24 hours.[5] *See Huang v. Mahsukhani*, C.A. No. 4:16-1269-BHH, 2016 WL 6694530, at *3 (D.S.C. Nov. 15, 2016) (citations omitted). More importantly, the Supreme Court in *Wolff* did not set any specific time limit for the delivery of an incident report. *See Wolff*, 418 U.S. at 563-76. *See also Riley v. Drew*, C.A. No. 4:12-1894-RMG, 2013 WL 2285941, at *5 (D.S.C. May 23, 2013) ("Violations of BOP regulations do not equate to a violation of due process.") (citation omitted). "In fact, the only time limit set forth in *Wolff* is the requirement that an inmate receive at least 24 hours after written notice of the charges to prepare for a hearing, and there is no question here that the petitioner received notice of the charges and notice of the hearing . . . . " *Huang*, 2016 WL 6694530, at *3. Here, as discussed above, the record indicates that the petitioner received

---

[5] In his response to the motion for summary judgment, the petitioner cites the mandatory language of the DRJ Policy and Procedure Manual § 7.24.1(10), which provides that the facility "shall ensure that an inmate charged with a rule violation receives a copy of the . . . . written statement of the charge . . . within 24 hours of the incident" (doc. 12 at 3; doc. 12-2 at 1). Nonetheless, the mere failure of officials to follow the prison's internal regulations does not amount to a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). As an inmate has no constitutional right to receive an incident report within 24 hours after the alleged incident, this claim fails.

all of the procedural safeguards set forth in *Wolff*. Accordingly, summary judgment should be granted.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the respondent's motion for summary judgment (doc. 9) be granted and the petition be dismissed.

s/ Kevin F. McDonald
United States Magistrate Judge

September 25, 2017
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).